CHARLES GOOLDY, CLAIMANT, RESPONDENT, v. J. E. LAVENDER, EXECUTOR OF THE ESTATE OF W. A. CARNEFIX, DECEASED, APPELLANT.*— 16 S. W. (2d) 681.

St. Louis Court of Appeals. Opinion filed May. 7, 1929.

*Corpus Juris-Cyc References: Executors and Administrators, 23CJ, section 387, p. 1171, n. 18; 24CJ, section 907, p. 297, n. 16.

*Greensfelder, Rosenberger & Grand* and *Glover E. Dowell* for appellant.

*W. C. Hughes* and *N. T. Cave* for respondent.

NIPPER, J.—This suit originated by Charles Gooldy filing in the probate court of Montgomery county, a claim against the estate of W. A. Carnefix, deceased, whereby Gooldy demanded of said estate the sum of $4917.50. The case was taken to the circuit court and there the claimant recovered judgment against the said estate in the sum of $1700. From this judgment the executor has appealed.

The record discloses that there was a plea in abatement filed by appellant, setting up the grounds that claimant split his cause of action, but this was overruled.

It appears from the evidence that for a number of years prior to the spring of 1924, W. A. Carnefix, who lived near McKittrick, in Montgomery county, had been spending his winters at the Fulton Hotel in Fulton, Missouri, and in the spring he would go back to Mc-Kittrick. In the spring of 1924, when he left Fulton he made ar-

rangements with Mr. & Mrs. Gooldy, who were conducting a rooming house in Fulton, to room with them in the fall of 1924 when he again returned to Fulton. The Gooldys conducted a rooming house but did not furnish their roomers with meals. At the time Mr. Carnefix made arrangements to stay with the Gooldys nothing was said about what he was to pay or the price they were to charge him for his room. However, when he returned in the fall of 1924 he took up is abode at the Gooldy home, and took his meals at a cafe in Fulton for a few months. In the early part of the year 1925, he became ill and was unable to go to the cafe for his meals. Sometimes his meals were sent to him from the cafe and sometimes Mr. Gooldy would go get them for him. Carnefix was an old man, then past eighty years. He stayed at the Gooldys from that time until October, 1926, when he died. He made these trips to Fulton in order to have his eyes treated. It appears that he had cataracts on his eyes; was blind in one eye and could not see well out of the other. He was a large man, weighing over two hundred pounds. When he first went to the Gooldys he paid $3.50 a week for his room, and then when he became sick in the spring of 1925 he made arrangements to take his meals at the Gooldy home, for which he had at first paid $3.50 per week, and later this was raised to $4.50 per week.

It is unnecessary to go into the details as to the helpless condition of Mr. Carnefix while he stayed at the Gooldys, or the extreme trouble he made for them. The evidence shows conclusively that he had to be helped to the bath room, and was an unusual care and burden for those who took care of him. At one time the suggestion was made that he should be taken to the hospital. When that was done he cried and wanted to stay with the claimant and his wife because he said they had been good to him. The services rendered to Mr. Carnefix by the Gooldys were excellent, and his condition was such that he required an unusual amount of attention.

The principal question involved here is whether or not respondent split his cause of action, or whether or not the two claims arose out of distinct contracts and understandings. Therefore, we must discuss the evidence with respect to this particular phase of the case. When Mr. Carnefix died and Mr. Gooldy visited Mr. Lavender at his bank in Montgomery county with respect to some current expenses amounting to about $95 he told Mr. Lavender, who was the executor, that he and his wife were not satisfied and felt like they should have some additional pay for the services they had rendered to Mr. Carnefix. Mr. Lavender, who appears to have been a generous man, asked Mr. Gooldy what he would want. Mr. Gooldy told him he thought they should have something like the charges they make in a hospital. He was then told by Mr. Lavender to go home and talk the matter over with his wife and see what they would want. He was requested

by Mr. Lavender to talk it over with Mr. Carnefix's nephew, but he did not go to see the nephew at that time because of the condition of the roads, stating that he wanted to get off of the dirt roads and go home. Mr. Lavender said that Mr. Gooldy's conversation indicated to his mind that he intended to make some additional claim.

In September, 1925, Mr. Carnefix made a will, in which he left to the Gooldys $500, but after the making of this will he told several witnesses that he wanted the Gooldys well paid for the services rendered him because they had been exceptionally kind. There were several witnesses who testified that Mr. Carnefix had mentioned to them the fact of his making a will, and said that he had given the Gooldys $500 as a present, and after so saying, he would make the further statement that he wanted them to be well paid for taking care of him. After Mr. Gooldy had the conversation with Mr. Lavender after Carnefix died, and after Mr. Lavender had told Mr. Gooldy to go home and fix up his account, Mr. Gooldy wrote Mr. Lavender as follows:

"Fulton, Mo. 12-2-26.

"Mr. J. E. Lavender,
"Dear Mr. Lavender:

"I have been thinking several days of writing you in regard to our meeting at Montgomery, but the weather and roads have been so bad, I thought would write you what conclusion we had come to in the Carnefix matter. We think we ought to have $5 per day. We have inquired of the hospital rates and with the nursing we gave him, would have cost him a great deal more than that he told several here that he wanted us to have as much as he would have to pay at the Hospital or more. Now Mr. Lavender you write us & tell us what you think about this. We don't want anything but what is right, but you know we had an awful time with that poor old man. I am inclosing statement of bal due us on acct with him hoping to hear from you soon we remain.

"Yours Respt.
"C. R. GOOLDY."

To this Mr. Lavender replied as follows:
"Dear Mr. Gooldy:

"I am returning herewith your acct. against the W. A. Carnefix estate. Attach same to the "Demand" enclosed, make affidavit to same and return and same will be presented to the Court for allowance.

"In regard to the other claim you did not state number of days you would claim.

"I have talked to Pete Godley in regard to your contemplated claim, and he says that the $500 left by his Uncle was intended to compensate you for your trouble. It is apparent that the heirs will

not consent for me to allow much of a claim, and I hesitate to do anything contrary to their wishes in the matter. I understand the law gives me the right to recomend the payment of any just claims coming in while that is true, yet I am not seeking the ill will of anyone, and wish you might see Pete and talk to him in regard to the matter.''

From the testimony of Mr. Lavender we gather that the Gooldys rendered to Mr. Carnefix every service that was possible. In fact, there is no dispute about the fact that the Gooldys were exceptionally kind to him and that he was an unusual and exceptional burden to them.

The respondent seeks to uphold this judgment upon two theories. First, it is contended that claimant had a right to split his cause of action because his claims grew out of two entirely different transactions, and further, that if claimant did split his cause of action, the executor by his action and conduct, waived his right to make that defense because he requested claimant to prepare his claim for $95 when he knew Gooldy was intending to claim more than this amount. The claim for $95 was presented and allowed by the probate court before the claim for additional services was filed. This $95 claim consisted of items for room and board, a bill for the special nurse, and other incidental expenses. The claim upon which this suit is based was for nursing, care, attention, *et cetera*, which, in our opinion, clearly should have been included in the original bill. It cannot be said that they arose out of different transactions, or that they are claims which should have, or could have been properly separated. Claimant had a single cause of action against the estate; all that he asked for should have been embraced in one claim and he should not be allowed to maintain an additional suit for additional services, unless the splitting of the cause of action was waived by the executor. [Bircher v. Boemler, 204 Mo. 554, 103 S. W. 40.] It cannot be said from the facts, as detailed and disclosed by this record, that the executor waived the splitting of claimant's demand and is in no position to complain.

The executor or administrator is in a sense a trustee for all the parties interested in an estate, and it is his duty to protect the interests of all parties interested in such estate against all claims and demands which are not legally enforceable against the estate, and as a general rule, he cannot waive the requirements of the statutes of non claim, nor dispense with the filing of the claim by agreement. [24 C. J. 370; Harrison Machine Works v. Aufderheide, (Mo. App.) 280 S. W. 711.]

We do not think that the facts in this case show that the representative of the estate waived the requirement that the claimant should have embraced his claims in one cause of action, nor do we think that

the executor, who was acting in the capacity of a trustee for creditors and all persons interested in the estate, could waive such requirement. In our opinion, the plea in abatement should have been sustained. The judgment is accordingly reversed. *Becker, J.,* concurs; *Haid, P. J.,* not sitting.